## H. J. SHADWICK V. THE STATE.

No. 14815. Delivered January 27, 1932.
Appeal Reinstated June 22, 1932.
Rehearing Granted October 19, 1932.
Reported in 53 S. W. (2d) 614.

The opinion states the case.

*Will R. Saunders,* of Amarillo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for theft; punishment, two years in the penitentiary.

The trial term of the court below adjourned on December 12, 1930. On January 6, 1931, what is denominated a recog-

nizance bond was made. It appears to be approved only by the sheriff. The law requires that an appeal bond made after the adjournment of the trial term, shall be approved by the sheriff and the district judge. There being no legal recognizance or appeal bond in this case, this court is without jurisdiction.

The appeal will be dismissed.

*Dismissed.*

LATTIMORE, JUDGE.—Conviction for theft; punishment, two years in the penitentiary.

At a former day of this term, this appeal was dismissed because of a defective appeal bond. A proper appeal bond having been filed, the appeal is reinstated, and the case now considered on its merits.

A. C. Dale was a railroad man, working about May 14, 1930, for the P. & S. F. Ry. Co. Appellant was a switch foreman for the same railroad company at said time, working in and around Pampa. Mr. Guyer operated the Texas Garage at Pampa. Moon, Hiatt and Sweeney worked in various capacities for the Phillips Petroleum Company which had a refinery at Pampa, connected with which were loading racks for loading gasoline refined by the company. On the morning of May 14, 1930, two Phillips Petroleum Company cars were shown by the records of the railway company to be on the loading racks of said Petroleum Company. The numbers of these cars appear in the record. On that same day Dale sold a car of gasoline to Guyer at nine cents per gallon. The two cars above referred to were moved from the loading rack of the Phillips Petroleum Company to a track which served a storage tank of the Texas Garage operated by Mr. Guyer, and on the morning of May 15th one of these cars was unloaded into said storage tank. After it was unloaded, and on the same day, Dale demanded and received from Guyer a check for $731.97 in payment for said car of gasoline. The check was payable to A. C. Dale. On the same day said check was taken to a bank in Pampa by this appellant Shadwick, and the amount thereof was deposited by him in said bank to his credit. The railroad records of the location and movement of cars in the yards at Pampa showing that on the morning of May 14th said cars were at the Phillips Petroleum Company's loading rack, and the next check of said cars showing that the following morning they were on the track serving the storage tank of the Texas Garage, and there being no record of any order for them to be so moved, evidently caused suspicion and led to investigation, following which arrests were made. Two accomplices swore to facts which made out a complete case

of theft of said gasoline, and showed that appellant was an active participant in the commission of the crime, it being his part to move and dispose of the gasoline after it had been made ready for shipment and disposition by the conspirators who worked for the Phillips Petroleum Company.

Appellant in his brief urges the lack of corroboration of the accomplices. That the money or check given Dale for the stolen gasoline by Guyer on the 15th of May, was established by witnesses, not accomplices, to have been turned over to appellant and to be in his possession and by deposit in the bank asserted to be his, on the same day the gasoline was stolen, appears without dispute. The accomplices claimed that appellant paid to them several hundred dollars a few days after the theft. Appellant's account at his bank showed the deposit of the $731.97 on May 16th, and also showed a few days later a check-out from said account of $450, a sum sufficient to cover the amount claimed by the accomplices to have been paid them by appellant as their part of the proceeds of the stolen gasoline. In our opinion, there were circumstances corroborating the accomplices, and sufficiently tending to connect appellant with the theft of the gasoline.

Appellant asserted misconduct of the jury, claiming that, after retirement, they discussed his failure to testify. Three jurors testified upon the hearing of the motion for new trial. It was shown beyond question that upon the first ballot the jury stood nine to three for conviction, those voting not guilty being Hurst, Probst and Andrews. The testimony of Hurst and Probst makes plain that, whatever reference may have been made to the failure of defendant to testify, had nothing to do with changing their views from not guilty to guilty. Article 710, C. C. P., forbids that the failure of the defendant to testify shall be taken as a circumstance against him. This court has often held that mere casual references to the failure of the accused to testify, which are checked and the matter not discussed in such way as to make evident the fact that it was taken by the jury, or some member thereof, as a circumstance against him, will not be cause for reversal. Mr. Boston, foreman of the jury, testified that there was a reference made to the failure of appellant to testify. According to his testimony, this statement was made by Mr. Hurst, one of the jurors who was favorable to appellant, and the last juror to vote for conviction. In one place Mr. Boston testified that Mr. Hurst was the one who called attention to the failure of defendant to testify. It appears from the testimony of Mr. Hurst, as well as that of Mr.

Boston, that Mr. Hurst called for the presence in the jury room of certain written testimony material to the case which was sent in, and that, after Hurst examined this, he said he was ready to vote for conviction. We think the trial court within his discretion in overruling the motion for new trial. See Wilson v. State, 87 Texas Crim. Rep., 538; Taylor v. State, 88 Texas Crim. Rep., 470; Vinson v. State, 96 Texas Crim. Rep., 307; Lamb v. State, 98 Texas Crim. Rep., 358.

There is complaint of the argument of Mr. Weeks, special prosecutor, which argument is set out in the bill of exception as follows:

"These deposit slips and this check made out the State's case, (referring to the deposit slips of H. J. Shadwick and the check for $731.97, drawn on the First National Bank of White Deer, Texas, signed: 'White Deer Motor Company by L. M. Guyer,' and shown to have been deposited to the credit of H. J. Shadwick in the First National Bank of Pampa, Texas.) No witness has been called by the defendant to deny them."

Appellant asserts that this was such reference to the failure of the defendant to testify as to furnish ground for reversal. We are not able to agree with appellant. The part of the argument so claimed as a reference to appellant's failure to testify must be the statement: "No witness has been called by the defendant to deny them." Guyer was a witness to the check referred to, and said he gave it to Dale. Dale was not called to testify, nor was he offered as a witness by the accused. To say that he could not have testified because indicted for the same offense would involve an assumption wholly without support in this record. For all we know, Dale may have been tried and acquitted, or the state might have waived any objection to Dale testifying. We can not lend support to such a claim advanced without more proof to establish it. Again, the record shows the transaction between appellant and Mr. Vickers to have occurred at a bank where, for aught this record shows, there may have been a dozen people cognizant of the matters pertaining to the deposit of the money. The language used which by interpretation is attempted to be construed as referring to the failure of defendant to testify, must be of such a character as that the reference is a necessary one, in order to effect a reversal.

Appellant's bill of exception No. 6 sets out four pages of questions and answers of the witness Hiatt, to all of which it was objected that the testimony was immaterial and irrelevant to any issue in the case, and transpired out of the presence

and hearing of appellant. As far as we are able to understand said bill, it brings here matters elicited from Hiatt explanatory of matters brought out from him by the appellant upon cross-examination. The statements given by this witness and appearing in the bill of exception appear to have no criminating effect upon appellant, and seem to relate wholly to the manner and circumstances surrounding the giving of a statement by Hiatt. There seems nothing in the testimony capable of any injury to the accused. We do not deem the matter complained of in this bill of exception of such serious nature as to call for a reversal.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant's motion for rehearing is predicated upon two points, first, that we were in error in holding that the evidence corroborative of that of the accomplice witness was sufficient; second, that we were in error in the conclusion reached with reference to appellant's claim of misconduct of the jury.

The testimony of the accomplice witness connected Shadwick with the transaction, but the difficulty arises in appraising the evidence which was introduced to corroborate their testimony. The payment for the gasoline was made by a check for $731.97 payable to A. C. Dale. The record shows that Dale was present in the court room when the case against Shadwick was tried. He was not called as a witness. There is no explanation in the record as to how or when the check went into the possession of Shadwick. The amount of the check was deposited in the First National Bank of Pampa, Texas, to the credit of Shadwick on May 15th. The check bears the indorsement of Dale, but does not bear the indorsement of Shadwick. The deposit slip for the amount of the check does not show that it was deposited by Dale to Shadwick's credit. It is insisted that the testimony of the officer of the bank who took the deposit, when analyzed, shows that while he testified it was Shadwick who made the deposit, really it was only the expression of the opinion of the witness, arrived at by a process of reasoning from the general course of business at the bank, and discloses that he had no personal recollection of the transaction whatever. This becomes important in determining the sufficiency of the evidence to corroborate the testimony of the accomplice, and presents the matter in such light as would de-

mand further consideration but for the fact that we now believe the case should be reversed upon another ground; therefore the question just alluded to will not be further discussed at this time, as the evidence upon the point mentioned may not be the same upon another trial.

A further review of the record in the light of appellant's motion and the argument presented thereon leads us to believe we were in error in the conclusion with reference to appellant's claim that the jury considered the failure of appellant to testify as a circumstance against him. The accomplice witnesses testified that, some days after the Dale check was deposited in the bank, appellant delivered a check to one of the accomplices for a sufficient sum of money to cover their part. The exact amount of the check was not given by any of the accomplice witnesses. The ledger sheet of the bank shows that on May 20th there was a charge against Shadwick's account of $450. The record is silent as to the items which made up this aggregate charge. One bank official testified that, if the checks going to make up this aggregate had not been returned to Shadwick, they would still be in the bank and that he could secure them. He later returned and testified that the checks were not in the bank. It will be seen from the statement already made that the corroborating evidence revolves around Shadwick's account as shown by the bank ledger, and the deposit of the Dale check, it being contended that the evidence was uncertain as to whether Shadwick had deposited the Dale check or whether Dale had deposited it to Shadwick's account. Appellant's case was submitted to the jury with the evidence in that condition. A discussion arose with reference to the matter, as clearly appears from the testimony of the three jurors introduced by appellant upon the hearing of the motion for new trial. Their evidence shows that upon the first ballot nine jurors were for conviction and three for acquittal. Boston, who was foreman of the jury, testified as follows:

"With reference to whether anything was said relative to the failure of the defendant to testify, in the jury's deliberation, —well, some member of the jury said that if Shadwick wasn't guilty he ought to have gone on the stand and said so. I am not sure when that was said relative to the time we sent for the documentary evidence; I believe it was afterwards. I do not recall what member of the jury made that remark. The next ballot was taken, approximately—might have been twenty minutes after that occurred. Yes, after that remark was made

and the next ballot was taken, the second ballot stood eleven to one for conviction."

This juror further testified that as foreman of the jury he warned the jurors who had spoken about the defendant not having testified that the court had instructed them not to take that into consideration. He further said: "I am not sure the fact was mentioned again after this first time we talked about it, I believe somebody else did."

It further appears from the testimony of this juror that they had taken with them upon retirement to the jury room the Dale check, but that, when this matter came up, they requested the court to send them the deposit slip, and the ledger sheet which was done. Boston testified further: "Mr. Hurst didn't vote for conviction until after we sent for the deposit slip and ledger sheets. That was the point he held off on. As to what was said in the jury room as to the deposit slip and the ledger sheets reflecting the truth and that if it did not reflect the truth, Mr. Shadwick would have taken the stand and denied it, well, it was mentioned. The fact that Mr. Shadwick didn't testify in his own behalf was mentioned. I believe Mr. Hurst called attention to it and I told him we couldn't use that against Mr. Shadwick. That was about it. It was mentioned and we sent for the deposit slip and we did send for the ledger sheets and it was mentioned in the jury room that these statements reflected the truth or Mr. Shadwick would have gone on the stand and denied it."

Mr. Hurst, one of the jurors, testified as follows: "Relative to what was said, after the ledger sheets and the deposit slip had been brought into the jury room, with reference to Mr. Shadwick's failure to testify, as near as I can recall,—well, we figured everything up there, and we just felt like that being as he didn't testify, he must have been guilty. Yes, then a third ballot was taken, and I went over and voted for conviction. As to whether I mean I figured that what had been mentioned about the $450.00 check, in connection with the bank statement, and the fact that there is a claim that he got some money, that I felt that Mr. Shadwick should have produced, or caused to be produced, that check, yes, sir."

Mr. Propst, another of the jurors, testified as follows: "As to what was said with reference to Shadwick's failure to testify in the case—wasn't anything I remember about. Yes, it is a fact that some of the jurors said if the check didn't reflect the truth he would have denied it. I don't remember what was said with reference to the ledger sheet with reference to Shad-

wick's failure to explain the ledger sheet. Yes, it was being talked about. First by one, and then by another, and I don't remember; as to whether it was mentioned several times about his not testifying,—well, I think a couple of times."

We have not undertaken to set out in detail all the testimony of the three jurors who were examined upon the point under discussion. It is apparent from the record that the state was undertaking to show that, after the jurors had examined the deposit slip and the bank ledger sheets, they were sufficiently satisfied as to appellant's guilt; that the change on the part of the jurors was not brought about by any reference to appellant's failure to testify; that, in view of the fact that the foreman had cautioned the jury that the court had instructed them not to consider the failure of defendant to testify, there was no such discussion of it as would bring about a reversal of the case. This was our view of the matter upon original submission. Further consideration leads us to the conclusion that we were in error. Article 710, C. C. P., provides that the failure of the defendant to testify in his own behalf "shall not be taken as a circumstance against him." It seems to be perfectly clear that the jury got into a discussion as to the effect of the deposit slip and the ledger sheets; that, after examination of them, some of the jurors said, if appellant was not guilty, he would have gone upon the stand and testified regarding the deposit slip and the ledger account, and would have made an explanation 'of the matters which evidently in the jury's opinion needed clearing up. These jurors were evidently using as a circumstance against appellant his failure to testify.

Under these circumstances, we have no alternative under the provisions of article 710, supra, but to grant the motion for rehearing, set aside the opinion of affirmance, and order a reversal of the judgment.

*Reversed and remanded.*